UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

XAVIER HENRY,

        Plaintiff,

v.

HEIDI E. WASHINGTON et al.,

        Defendants.
_____/

Case No. 2:19-cv-33

Honorable Robert J. Jonker

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Washington.

## Discussion

    I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events

about which he complains, however, occurred at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. Plaintiff sues MDOC Director Heidi E. Washington, Director of Special Activities David Leach, and Prison Chaplain Unknown Lindholm.

Plaintiff alleges that he has been a practicing Muslim since 1980. Plaintiff has had a stated religious preference of Muslim with the MDOC since 2008 and has never missed fasting during the Holy month of Ramadan. Plaintiff was transferred to LMF on February 2, 2016, and signed a request form to participate in the 2016 Ramadan fast during religious services. Plaintiff assumed that the procedure would be the same in 2017.

In 2017, the memo showing the deadline to sign up for the Ramadan fast was posted on a cart, which was stationed in front of the office where prisoners could get disbursements, grievance and medical forms, and requests to participate in Ramadan. On February 9, 2017, Plaintiff was placed in administrative segregation. Therefore, Plaintiff could not use the normal services for general population prisoners. Consequently, Plaintiff never saw the memo and was unaware of the deadline.

On Friday May 5, 2017, Plaintiff was released from administrative segregation after nearly 90 days, and he immediately sent a written request to attend the Friday mandatory Al-Islam Jumu'ah service. On Monday May 8, 2017, Defendant Lindholm responded to Plaintiff's request and Plaintiff attended the service on Friday May 12, 2017. While at the service, Plaintiff requested a lacto-ovo-vegetarian meal for Ramadan. Defendant Lindholm told Plaintiff that it was too late to sign up for the fast because the deadline was May 8, 2017. Plaintiff explained that he had just been released from administrative segregation and thought that he could sign up during the service like he had in 2016. Defendant Lindholm just stated that it was different this year.

Plaintiff later learned that on May 8, 2017, the Assistant Resident Unit Supervisor (ARUS) had gone cell to cell in administrative segregation in order to collect names of those wishing to participate in the Ramadan fast. Because Plaintiff had already been released from administrative segregation, he was not included in this count. Plaintiff asked Defendant Lindholm if he could call Defendant Leach and add his name to the list. Plaintiff states that Defendant Lindholm told him that Defendant Leach had refused to add Plaintiff's name and had stated that if it became a legal issue, they would deal with it. Defendant Leach further stated that it was not his responsibility to inform every Muslim inmate of the deadline.

On May 15, 2017, Plaintiff told Deputy Warden Immel about his problem and asked for help. Deputy Warden Immel told Plaintiff to send him a kite, but never replied to Plaintiff's kite. On May 17, 2017, Plaintiff sent a letter to Defendant Leach explaining that staff in administrative segregation had not signed prisoners up for the fast until the day of the deadline, and that participation in the Ramadan fast was extremely important to Plaintiff's religious beliefs. Prisoner Counselor Prunick reviewed Plaintiff's step I grievance in a perfunctory way, incorrectly stating that Plaintiff had been released to Maple Unit, when he had actually been released to Pine Unit. On May 19, 2017, Plaintiff sent another letter to Defendant Lindholm, asking him to contact Deputy Warden Immel and the Trinity Food Service Director in an effort to have Plaintiff's name placed on the list for the Ramadan fast.

On May 26, 2017, Defendant Lindholm threatened to replace Plaintiff's religious position as the prayer leader for the Salatul Jumu'ah, which is the Friday congregation prayer, if Plaintiff continued to write grievances. Defendant Lindholm stated, "If you and I can't get along, I will replace you for another chaplain's assistan[t]." On May 29, 2017, Plaintiff filed a request for declaratory relief to Defendant Washington. Defendant Washington's office did not respond

to Plaintiff's request until August 10, 2017. During Ramadan of 2017, Plaintiff was not allowed to participate in the fast and suffered weight loss and emotional trauma.

Plaintiff claims that Defendants violated his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a). Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the

4

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff fails to make specific factual allegations against Defendant Washington, other than his claim that she failed to respond to his request for a declaratory ruling in a prompt or satisfactory manner. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff

has failed to allege that Defendant Washington engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against her.

The Court concludes that Plaintiff's First Amendment and RLUIPA claims against Defendants Leach and Lindholm are not clearly frivolous. Therefore, these claims are not properly dismissed on initial review.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Washington will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's First Amendment and RLUIPA claims against Defendants Leach and Lindholm remain in the case.

An order consistent with this opinion will be entered.


Dated:   April 17, 2019          /s/ Robert J. Jonker
                                 ROBERT J. JONKER
                                 CHIEF UNITED STATES DISTRICT JUDGE